UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| XIOMARA GLOVER<br><br>Plaintiff,<br><br>vs.<br><br>TRIUMPH CONSTRUCTION CORP., ALLSTARS SECURITY & PROTECTIVE SERVICES, INC.,<br><br>Defendants | **COMPLAINT AND JURY DEMAND**<br><br>18-CV-6763 |

## NATURE OF ACTION

1. This is an overtime, discrimination, prevailing wage, and retaliation employment action brought by Plaintiff Xiomara Glover for violation of her right to "overtime pay" under the Federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), as well as associated NYLL and common law claims.

2. The claims arise from Plaintiff's employment as a "flagger" at defendants' construction sites in Brooklyn, New York.

## PARTIES

3. Plaintiff Xiomara Glover is a United States citizen, and resides in Brooklyn, New York.

4. Defendant Triumph Construction Corp. ("Triumph") is a domestic business corporation with its principal office in Bronx, New York.

5. Defendant Allstars Security & Protective Services, Inc. ("Allstars") is a domestic business corporation with its principal office in Queens, New York.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 207.

7. Venue is proper in the United States District Court, Eastern District of New York pursuant to 28 U.S.C. § 1391, because defendants are subject to the Court's personal jurisdiction with respect to this action, and a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of New York.

## FACTUAL ALLEGATIONS

### ALLSTARS AND TRIUMPH

8. In approximately November 2017, Plaintiff started working for Allstars as a "flagger" at a construction site in Coney Island, Brooklyn, New York. She was paid $12.00 per hour for her labors.

9. At the time Plaintiff was hired, Allstars was a subcontractor to Triumph Construction. Although Plaintiff's paychecks initially were from Allstars, she applied for the job in a construction trailer owned and operated by Triumph, she submitted her employment application to a Triumph employee, and she was always directly supervised by Triumph employees. She eventually stopped working for Allstars and started working more directly for Triumph, with no change in duties, supervision, or work environment.

10. For the purposes of this FLSA and NYLL action, Allstars and Triumph were joint employers.

### PLAINTIFF'S PAY AND PAY RATES

11. Allstars paid Plaintiff through a combination of cash and paycheck.

12. Although Plaintiff regularly worked 50-60 hour weeks, she was frequently not paid time and a half for all of the hours she worked over 40 each week, and her paystubs almost never reflected her hours or her pay accurately.

13. Plaintiff often complained about her inaccurate hours to the owners of Allstars and supervisors at Triumph. But when Plaintiff complained, she would find the next week she would be laid off temporarily, or scheduled for less work, on less favorable shifts.

14. At one point, Plaintiff was laid off, technically by Allstars, and then rehired a few weeks later directly by Triumph.

15. When Plaintiff was rehired, nothing about her job duties, work location, or supervision changed.

16. Plaintiff's hours were often manipulated- defendants would claim sign in sheets were missing, or would tell Plaintiff she had not signed in when she had. Oftentimes, defendants would tell Plaintiff not to sign in with the City Inspector, who maintained a separate log of employees on the site.

PLAINTIFF'S JOB DUTIES

17. As a "flagger" Plaintiff, flagged pedestrians through construction sites, and flagged work trucks in and out of construction sites. Plaintiff shoveled ice and snow and moved barricades.

18. Plaintiff's duties also included being on site when welding or electrical work was being performed, as Plaintiff possesses her "F60 Fireguard License" ("F60"), and defendants were often required to have such a credentialed employee on site during particular operations.

19. In fact, Plaintiff was specifically asked to bring her F60 to the construction office/ trailer, where Triumph kept a copy on site, to show to any authorities in case of a safety audit.

20. Plaintiff's duties required her to be on the construction work site, protecting the public from the inherent dangers on and about the site, safeguarding the work crew from the street traffic, and directing the movement of construction equipment in, on, and off the site.

21. Plaintiff was often posted right next to manholes while welding or electrical work was taking place, and frequently within the zone of danger within the construction site.

PREVAILING WAGES

22. The construction job Plaintiff worked on for defendants was a project funded by the New York City Economic Development Corporation ("NYCEDC"), which is a public benefit corporation or a commission appointed pursuant to law, as those terms are defined in New York Labor Law ("NYLL") §220-2.

23. The job on which Plaintiff worked was pursuant to a contract between the NYCEDC and Triumph Construction, which contained provisions that each laborer, workman or mechanic, employed by such contractor, subcontractor or other person about or upon the job, must be paid at least the prevailing rate for a day's work in the same trade or occupation in the locality, as well as applicable supplements.

24. Plaintiff's flagger job was a "laborer" job, entitled to those provisions.

25. Nevertheless, Plaintiff was not paid the prevailing wage, or the applicable supplements.

26. When it was brought to Plaintiff's attention that she should be receiving prevailing wage, she complained to her employers, both at Triumph, and at Allstars, that she was being underpaid.

27. The prevailing wage for a flagger (or "flag person") in New York City from July 1, 2017 to present was: $41.50 per hour; $40.63 supplemental benefit rate per hour; time and one half the regular rate after an 8 hour day, time and one half the regular rate for Saturday, double

4

time the regular rate for Sunday, and double time the regular rate for work on New Year's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Thanksgiving Day, and Christmas Day.

28. Plaintiff was paid between $12.00 and $20.00 per hour for her work for Allstars and Triumph, and not paid any of the rates referenced above.

RACE AND GENDER

29. Plaintiff is a black female. Virtually all of the workers at Plaintiff's worksite were Portuguese men.

30. Plaintiff was regularly subjected to crude comments about her race and gender, but made little complaint. There were repeated references to Plaintiff's "big black boyfriend", and Plaintiff was told she "needed someone who could treat her right"- IE, a man, who could pay for her to not have to work. The foreman, was always saying he needed a "bobo", or blowjob, to Plaintiff, or near Plaintiff. Although the complaints made Plaintiff uncomfortable and angry at times,

31. On August 15, 2018 the foreman made another inappropriate comment to Plaintiff, about Plaintiff giving another employee a blowjob.

32. Plaintiff ultimately decided to bring her concerns to a city inspector at the site, and did so on August 17th.

33. There ensued a series of interactions among management and with Plaintiff and the foreman's comment.

34. Very soon thereafter, Plaintiff was told she was being laid off. That was quickly withdrawn, and Plaintiff was told she was being moved to another site, with a "nice black" supervisor, but Plaintiff wanted to stay at her Coney Island site, which was near her home and family.

35. On October 2, 2018, General Counsel for Triumph came to question Plaintiff with an investigator present, concerning the allegations of sexual harassment of Plaintiff.

PLAINTIFF'S TERMINATION

36. On October 19, 2018, Plaintiff's counsel reached out to General Counsel, to inquire about resolving any disputes between Plaintiff and Triumph, and raising complaints about sexual harassment, failure to pay prevailing wages, and failure to pay overtime pay.

37. Following that email, and after communications between Plaintiff's counsel and Triumph's general counsel, Plaintiff's work position was changed.

38. On October 30, 2018, Plaintiff was fired.

39. Plaintiff's work performance had always been satisfactory and at least as good as other employees, in the same position, who were not fired.

## FIRST CAUSE OF ACTION
**(Failure to Pay Overtime Compensation - 29 U.S.C. § 207, 12 NYCRR 142-2.2)**

40. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

41. At all relevant times, Defendants were "employers" engaged in interstate commerce and/or in the production of goods for commerce.

42. At all relevant times, Plaintiff was an employee and Defendants were employers within the meaning of the New York Labor Law.

43. At all relevant times, Defendants employed and/or continue to employ employees, including Plaintiff. At all relevant times, upon information and belief, Defendants had gross operating revenues in excess of $500,000.00.

44. Although Plaintiff worked in excess of 40 hours per week, defendants failed to pay Plaintiff one and one-half times Plaintiff's regular rate of pay for hours worked over 40.

45. The foregoing conduct constitutes a willful violation of the FLSA and the NYLL, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

## SECOND CAUSE OF ACTION
**(Gender and Race Discrimination and Retaliation- N.Y.C. Admin. Code §§ 8–107(1)(a), (7).)**

46. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

47. Defendants discharged Plaintiff from employment or discriminated against her in compensation or in terms, conditions or privileges of employment, because of Plaintiff's race, color, or gender.

48. Defendants retaliated against Plaintiff because Plaintiff opposed the race, color, or gender discrimination against her, and the retaliation was of such a nature that it would be reasonably likely to deter a person from engaging in such protected opposition.

## THIRD CAUSE OF ACTION
**(Breach of Contract/ Prevailing Wage Claim)**

49. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

50. The public works contracts entered into by defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work pursuant to such contracts.

51. Those prevailing rates of wages and supplemental benefits were made part of the public works contracts for the benefit of Plaintiff and the other employees performing work pursuant to such contracts.

52. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a

matter of law, requiring defendants to pay Plaintiff prevailing wages, daily/weekly overtime, and supplemental benefits for all work performed.

53. Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into directly or indirectly between defendants and certain public entities.

54. As a result of defendants' failure to pay Plaintiff at prevailing wage rates, Plaintiff is entitled to relief from defendants for breach of contract under New York common law.

## FOURTH CAUSE OF ACTION
### (New York Pay Stub requirement- NYLL § 195-1(d))

55. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

56. The NYLL and supporting regulations require employers to provide accurate, detailed paystub information to employees each payday.

57. Defendants did not provide accurate, detailed paystubs to Plaintiff as required.

58. Plaintiff is entitled to recover from Defendants, jointly and severally, $250.00 for each workday that the violation occurred or continued to occur, up to $5000.00, together with costs and attorneys' fees, pursuant to NLYY § 198-1(d).

## FIFTH CAUSE OF ACTION
### (NYLL Retaliation Claim- NYLL § 215)

59. Plaintiff alleges and incorporates by reference the allegations in the preceding paragraphs.

60. Defendants discharged, threatened, penalized, or retaliate against any Plaintiff because Plaintiff made complaints to her defendants, her employers, that defendants engaged in

conduct that the employee, reasonably and in good faith, believes violated provisions of the NYLL relating to overtime pay provisions and prevailing wage pay provisions.

61. At or before commencement of this action, notice of this action is being served upon the attorney general by Plaintiff, as required by N.Y. Lab. Law § 215-2(b).

62. Plaintiff is entitled to recover from defendants liquidated damages not more than twenty thousand dollars, costs and reasonable attorneys' fees, and rehiring or reinstatement of the Plaintiff to her former position with restoration of seniority or an award of front pay in lieu of reinstatement, and an award of lost compensation and damages, costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:

A. That defendants are found to have violated the Federal Fair Labor Standards Act and the New York Labor Law;

B. That defendants' violations as described above are found to be willful;

C. An award to Plaintiff for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

D. An award of reasonable attorneys' fees and costs pursuant to 29 USC § 216 and/or other applicable law;

E. Reinstatement of Plaintiff to her position as a Flag Person/ Laborer; and

F. For such further relief, in law or equity, as this Court may deem appropriate and just.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury as to all issues so triable.

DATED:  November 28, 2018

                Stoll, Glickman & Bellina, LLP

                _____
                Andrew B. Stoll (AS8808)
                Stoll, Glickman & Bellina, LLP
                300 Cadman Plaza West, 12th Floor
                Brooklyn, NY 11201
                astoll@stollglickman.com
                (718) 852-3710

To:

Triumph Construction Corp.
Attn: Bonnie Porzio, General Counsel
1354 Seneca Ave
Bronx, New York, 10474

Triumph Construction Corp.
Attn: Bonnie Porzio, General Counsel
45 Winchester Oval
New Rochelle, New York, 10805

Allstars Security & Protective Services, Inc.
24-219 131st Avenue
Rosedale, New York, 11422

Attorney General, State of New York
Labor Bureau
28 Liberty Street, 16th Floor
New York, NY 10005